**CITY OF HARLINGEN, Appellant,**

v.

**Arturo AVILA, et al., Appellees.**

**No. 13–95–179–CV.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 13, 1997.

Rehearing Overruled March 20, 1997.

Elizabeth C. Rogers, Len G. Briley, Jr., Haynes & Boone, San Antonio, Bettye S. Springer, Haynes and Boone, Fort Worth, for Appellant.

B. Craig Deats, Jenkins & Deats, P.C., Austin, for Appellees.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

**OPINION**

RODRIGUEZ, Justice.

Thirty-one fire fighters of the Harlingen Fire Department sued the City of Harlingen ("the City") seeking declaratory relief and back pay from the City's implementation of a seniority pay system in 1990. The fire fighters claimed that the 1990 system failed to comply with the Fire Fighters and Police Officers Civil Service Act ("the Act").[1] Fol-

---

1. Tex. Loc. Gov't Code Ann. §§ 141, 143 (Vernon    1988).

lowing a bench trial, the trial court found for the fire fighters and ordered that the City compensate each plaintiff with back pay (ranging from $47.40 to $23,859.09 per fire fighter). We affirm.

The City of Harlingen is a home rule city, with a population in excess of 10,000, and is subject to the requirements of Chapter 143 of the Texas Local Government Code, the Fire Fighter and Police Officer Civil Service Act. Section 143.041 of the Act sets salary requirements for fire fighter classifications in civil service cities such as Harlingen. Section 143.041(b) requires that all fire fighters in the same classification be paid the same base salary. Section 143.041(c) provides for, among other things, the payment of seniority increments in addition to base salary. At issue in this case is the seniority pay increment.

Prior to October 1, 1990, the City had a pay system ("1989 Pay Schedule") which provided seniority pay increments based upon length of service in the Fire Department. The system was made up of several classifications from Fire Fighter I to Fire Marshal. Each classification had seven pay steps, A thru G, with A the lowest and G the highest. A fire fighter started at the Fire Fighter I classification, and proceeded from Step A to B within that classification based upon completion of one year of service. He or she advanced to higher steps as years of service increased until the fire fighter reached step G. A fire fighter who was promoted from one classification to another (e.g., from Fire Fighter I to Fire Fighter II) was promoted to the same step in the new classification.[2] Thus, all fire fighters received the identical pay increment for the same amount of seniority. That is, while a Fire Lieutenant with five years of seniority would receive a higher base salary than a Fire Fighter II

with five years of seniority, the amount that each received as seniority pay was the same because they each had the same number of years of seniority.

Beginning October 1, 1990, the City implemented a new pay system ("1990 Pay Schedule") which is the focus of this litigation. This schedule had the same classifications as the prior schedule, but it had fifteen steps in each classification rather than seven. Within this system, each fire fighter remained in the same classification (e.g, Fire Fighter I, Fire Fighter II, Fire Lieutenant) but was placed at a step on the new schedule which paid them more than their existing step under the previous pay schedule.[3] After placement, a fire fighter would advance one step within a pay classification for each additional year of service within the classification.

Implementation of the new pay schedule resulted in fire fighters within the same classification but with vast differences in years of experience receiving the same base pay and seniority increment. For example, plaintiff Rito Barrera, who was promoted to Lieutenant on March 24, 1973, was placed at Step A, while Fire Lieutenant Ernesto Morin, who was only promoted to Lieutenant on October 12, 1990, was also placed at Step A.[4] Thus the lieutenant with sixteen years more experience than a junior lieutenant received the same base pay and the same seniority increment.

In 1993, the City implemented a new pay schedule ("1993 Pay Schedule"). Both parties agree that seniority payments made under the 1989 and 1993 pay schedules comply with the requirements of section 143.041. They only differ over the implementation of seniority payments under the 1990 Pay Schedule in effect from October 1, 1990 to October 6, 1993. At trial, the parties filed a

---

2. For example, a Fire Lieutenant, Step C, who was promoted to Captain would be promoted to Captain, Step C.

3. For example, if a Fire Fighter II was at step C under the old system receiving $100 as seniority pay, and if the same $100 could be obtained at step E under the new system, the Fire Fighter II was placed at step F, one step above his old salary.

4. The record is unrevealing, but we can only infer that under the 1989 Pay Schedule, Barrera's and Morin's base pay and seniority increments were each different figures but when combined, amounted to approximately the same total pay. This suggests that under the plan before 1990, the City may have been violating section 143.041(b), which requires the same base pay for all persons in the same classification. Plaintiffs dropped this claim at trial and it is not part of this appeal.

Joint Stipulation of Facts. They each presented oral and written arguments for the court but did not call witnesses. The trial court rendered judgment for the plaintiffs on the basis that " 'the 1990 pay schedule', which [the City] implemented for its Fire Department ... violated the requirements of TEXAS LOCAL GOVERNMENT CODE § 143.041 in that it allowed disparity in treatment of seniority impermissible under that statute." The court further found that the fire fighters are entitled to back pay "in the amounts represented by the difference between the step of the 1990 pay schedule into which they were actually placed, and the step in which they should have been placed had they been accorded seniority pay increments on the same basis as less senior fire fighters in the same classification."

█ In addition to challenging the trial court's interpretation of the Civil Service Act, the City has also challenged the legal and factual sufficiency of the evidence to support the trial court's finding. We do not, however, review the legal or factual sufficiency of the evidence in a case tried on stipulated facts. Rather, this court reviews, *de novo*, only the correctness of the application of the law to the admitted facts. *Trinity Universal Ins. Co. v. Fidelity & Casualty Co.*, 837 S.W.2d 202, 203 (Tex.App.—Dallas 1992, no writ); *Reed v. Valley Fed. Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *see also Pulido v. Dennis*, 888 S.W.2d 518, 520 (Tex. App.—El Paso 1994, no writ). Accordingly, we review the trial court's interpretation of the law for correctness.

█ When construing a statute, this court must determine, if possible, the intent of the legislature as expressed in the language of that statute. *Crimmins v. Lowry*, 691 S.W.2d 582, 584 (Tex.1985). In determining the meaning of statutory language, "consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction." *Sayre v. Mullins*, 681 S.W.2d 25, 27 (Tex.1984).

█ Section 143.041 of the Texas Local Government Code provides as follows:

(b) Except as provided by section 143.038 [Temporary Duties in Higher Classification], all fire fighters or police officers in the same classification are entitled to the same base salary.

(c) In addition to the base salary, each fire fighter or police officer is entitled to each of the following types of pay, if applicable:

(1) longevity or seniority pay;

(2) educational incentive pay as authorized by section 143.044;

(3) assignment pay as authorized by sections 143.042 and 143.043;

(4) certification pay as authorized by section 143.044; and

(5) shift differential pay as authorized by section 143.047.

TEX. LOCAL GOV'T CODE ANN. § 143.041(b)-(c) (Vernon 1988 & Supp.1992).

The City of Harlingen contends that the fire fighters have no vested right to receive any stated amount of money as compensation for seniority because the City's only obligation is to provide the same base pay for all fire fighters in the same classification. The City contends that it did not even have to pay seniority pay so long as it paid every fire fighter they same amount of base pay within each classification. They refer us to *International Ass'n of Fire Fighters, Local 1173 v. Baytown*, 837 S.W.2d 783 (Tex.App.—Houston [1st Dist.] 1992, writ denied), which the City claims stands for the proposition that a city has no obligation to pay salary increases to civil service employees based on seniority.

In *Baytown*, the union sued the City alleging that its payment schedule for employees in the "Fire Fighter" classification violated section 143.041. Under the schedule, all firefighters were grouped based on the number of years of service with the fire department. The base salary of each group was then adjusted so that each fire fighter with the same years of service received the same base salary. Under this plan, there was no automatic base salary increase based on years of service within a classification. Increases in base salary were provided by across-the-board percentage pay increases that the city council approved and that were granted at

the same time for all fire department employees regardless of classification.

Baytown argued that the differences between the respective salaries were based on the length of time a fire fighter had served in his classification and, thus, were permitted under section 143.041(c) as seniority pay. *Id.* at 788. The Union, on the other hand, argued that longevity or seniority pay may properly be paid under section 143.041(c), only so long as it is a pay increment based on years of service and "it increases consistently and uniformly for all persons in the classification." *Id.* The union further argued that Baytown could not maintain longevity or seniority pay increases for fire fighters based on seniority at a given point in time, while then depriving a fire fighter within the same classification who later achieves the same level of seniority the same pay increment. *Id.*

In holding for Baytown, the court of appeals concluded that because the base salary differences for employees of the fire fighter classification were based solely on number of years of service, Baytown's compensation plan for the fire fighter classification did not violate the same base salary requirement of section 143.041(b). *Id.*

The facts in *Baytown* are distinguishable from the present case. In *Baytown,* the fire fighters were first positioned within the classification according to years of service. Once positioned, automatic wage increases were frozen and only increased when allowed by the city council. The union was really arguing on behalf of the junior fire fighters who would be accumulating years of service, but would not receive the same "base pay" that the more senior fire fighters received when the plan was implemented. For example, a fire fighter who made $200 less per month than another fire fighter because he had two less years seniority was not guaranteed to be making that extra $200 two years later. That was a valid complaint but not the same complaint as presented in this case.

Here, the fire fighters do not complain that the plan itself was erroneous or in conflict with the statute. They complain about the way that individuals of differing seniority were placed into their respective steps. Without question and as a matter of law, a fire fighter is entitled to the same base pay as any other fire fighter in the same category (i.e., Fire Fighter I, Fire Fighter II, Fire Lieutenant, Fire Captain, etc.). Tex. Local Gov't Code Ann. § 143.041(b) (Vernon 1988). The question is, if a fire fighter has more seniority than another fire fighter in the same category, and if the City has committed to paying for seniority, should the City be required to pay the senior fire fighter a higher seniority increment than the junior fire fighter or is it permissible for the City to pay both employees the same increment? All things being equal, certainly a Fire Lieutenant with ten years of service should receive the same seniority increment as any other Fire Lieutenant with ten years experience. But are those two lieutenants being denied their due if another lieutenant with only two years experience receives the same seniority increment?

The fire fighters concede that the City does not have to pay any seniority increment, however if it does provide it, they argue, the City must provide that seniority pay increment on a uniform and consistent basis.

Citing *City of Beaumont v. Bond,* 546 S.W.2d 407 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.), the City argues that there is no vested right to receive seniority pay increments at a stated level in perpetuity. In *Bond,* the City of Beaumont canceled its automatic, annual pay raises because of budgetary constraints and also canceled giving any seniority payments in lieu of periodic across-the-board raises issued by the city council. There the fire fighters argued that they had a vested right to continue receiving the automatic raises every year. The appellate court disagreed and held that yearly increases could not be expected in perpetuity. *Id.* at 410. That, however, is not the Harlingen fire fighters' claim. They argue instead for placement within a classification according to seniority, not existing pay.[5]

---

**5.** It is obvious now that before the 1990 plan, the City was not paying persons within the same classification the same base pay. In the Fire Lieutenant example from above, the veteran lieu-

The City argues that as long as seniority pay is within its discretion, "it matters not whether a city entirely stops payment of seniority increments, or changes the formula by which such payments are measured." It argues that the effect of affirming the trial court's judgment would be to lock Harlingen and every other civil service city in Texas into a formula for seniority payments based upon total seniority with a fire department. It also contends that Harlingen would forever be unable to depart from or abolish this formula for seniority pay increments and would have to carry over a formula for payment of seniority increments from one compensation plan to another. In any event, it argues, the fact that no fire fighter experienced a loss in pay undermines the fire fighters' arguments that they suffered unequal treatment.

The Civil Service Act contains no guidelines or formulas by which seniority pay increments for civil service employees should be calculated. The City is correct that no precedent supports the proposition that payment of seniority increments must be measured with reference to years in the department or that the formula which existed under a prior plan must be transferred to a new plan. But so too, no precedent holds otherwise, and certainly few, if any, plans are likely to exist where a veteran of sixteen years is placed at the same seniority increment as a two-year veteran.

Given this lack of precedent and lack of express direction from the statute, we choose to infer an overriding legislative intent from section 143.041. As noted above, section 143.041 of the Texas Local Government Code provides that "all fire fighters or police officers in the same classification are entitled to the same base salary." TEX. LOCAL GOV'T CODE ANN. § 143.041(b) (Vernon 1988). While this does not refer directly to the succeeding section, which provides that these employees are entitled to seniority pay (where applicable), we can infer from this statement that the legislature was concerned with fairness and equal

treatment. To construe that section 143.041(b) demands a even-handed pay system while section 143.041(c) allows for uneven distribution of seniority pay would be an inconsistent interpretation of the statute. The most consistent interpretation is that the non-discriminatory implications of section 143.041(b) carry over to section 143.041(c). Therefore, a city that chooses to provide seniority or longevity pay must do so in a fair, even-handed, non-discriminatory manner. The City's placement of firefighters into the 1990 Pay System was not fair, evenhanded, and non-discriminatory.

We hold that the trial court, by finding that the 1990 Pay Schedule impermissibly allowed for disparate treatment of seniority, did not err in its interpretation of the statute.

Accordingly, the trial court's judgment is AFFIRMED.

tenant Barrera could only be making the same total pay as the two-year lieutenant Morin if Morin was drawing more base pay. When they grouped fire fighters according to total pay, Barrera and Morin should not have been at the same level.